**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

KALIEKA D. B.,

                                    Plaintiff,                    No. 3:24-CV-0371
              v.                                                  (DNH/PJE)


COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

─────────────────────────────────

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                             HOWARD D. OLINSKY, ESQ.
250 S. Clinton Street - Suite 210
Syracuse, New York, 13202
Attorneys for plaintiff


Social Security Administration                VERNON NORWOOD, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**


**REPORT-RECOMMENDATION AND ORDER**[1]

    Kalieka D. B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

─────────────────────

[1] This matter was referred to the undersigned for completion of a Report-Recommendation & Order pursuant to General Order No. 18 and Local Rule 72.3(e).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Commissioner") denying her application for child's insurance and supplemental security income benefits.  *See* Dkt. No. 1.

Plaintiff moves for judgment on the pleadings, seeking the decision to be reversed and remanded for further proceedings, specifically a de novo hearing.  *See* Dkt. No. 9.[3]  The Commissioner cross-moves for judgment on the pleadings.  *See* Dkt. No. 12.[4]  Plaintiff replies.  *See* Dkt. No. 13.  For the reasons stated below, the undersigned recommends that the Commissioner's decision be affirmed.

## I. **Background and Procedural History**

On July 2, 2021, plaintiff filed an application for Title XVI Supplemental Security Income Benefits, alleging a disability onset date of November 5, 2020.  *See* T. at 99-100, 228-234.  Plaintiff asserted disability due to "bipolar, depression, anxiety, post-traumatic stress disorder, schizophrenia, and blackouts." *Id.*  The Social Security Administration ("SSA") denied her claims initially on November 21, 2021, and on reconsideration on February 18, 2022.  *See id.* at 155-56.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Mary Jane Pelton held a hearing on April 27, 2023.  *See id.* at 49-72.  On June 1, 2023, the ALJ issued an unfavorable decision.  *See id.* at 13-28.  On February 21, 2024, the Appeals Council denied plaintiff's request for review.  *See id.* at 2.  Plaintiff timely commenced this action on March 18, 2024.  *See* Dkt. No. 1 ("Compl.").

---

[3] Citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.  Citations to the administrative transcript, Dkt. No. 8, refer to that document's original pagination – the Bates-stamped numbers in the bottom-right of the page – and will be cited as T. at [page number].

[4] This matter has been treated in accordance with General Order No. 18.  Under that General Order, once issue has been joined, Social Security appeals are treated, procedurally, as if cross motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II. **Legal Standards**

### A. **Standard of Review**

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  In reviewing the Commissioner's final decision, a district court may not determine de novo whether an individual is disabled.  *See Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or failed to support the decision with substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citations omitted). This is "a very deferential standard of review," meaning once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh conflicting evidence in the record) (citing *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate

conclusion is arguably supported by substantial evidence.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986).  However, if the ALJ applied the correct legal standards, and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

## B. **Determination of Disability**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting or expected to last continuously for "not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A "medically determinable impairment" is an affliction that is so severe it renders an individual unable to continue with their previous work or any other employment that may be available to them based upon their age, education, and work experience.  *See id.* § 423(d)(2)(A).  Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3); *see also Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.") (citing, *inter alia, Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

To determine whether the claimant is entitled to disability benefits, courts use a five-step evaluation, based on 20 C.F.R. §§ 404.1520 and 416.920, as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")].  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff can engage in gainful employment somewhere.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).

## IV.  Discussion

### A.  ALJ's Disability Evaluation

Applying the five-step sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since June 30, 2021.  *See* T. at 18.  At

step two, the ALJ determined that plaintiff had the following severe impairments: borderline personality disorder, schizoaffective disorder, bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). *See id.* At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.[5] *See id.* at 19. The ALJ then concluded that,

> the claimant can understand, remember, and carry out simple instructions. He[6] can use judgment to make simple work-related decisions. The claimant should work in a job with occasional changes in the routine work setting. He cannot perform work requiring a specific production rate or perform work which requires hourly quotas. The claimant should have occasional contact with coworkers, supervisors, and the public. He should have no more than occasional concentrated exposure to respiratory irritants such as dust, odors, fumes, and gases.

T. at 20-21. At step four, the ALJ determined that plaintiff has no past relevant work. *See id.* at 26. At step five, after considering the vocational expert's ("VE") testimony and plaintiff's RFC, age, limited education, and work experience,[7] the ALJ concluded that plaintiff could perform the following light exertion jobs existing in significant numbers in the national economy (1) Price Marker, DOT 209.587-034, 131,200 jobs nationally; (2) Laundry Worker, DOT 302.685-01019,400 jobs nationally; and (3) Routing Clerk, DOT 222.687-022, 105,8000 (sic). *See id.* at 27. Thus, the ALJ concluded that plaintiff has not been under a disability since June 30, 2021, the date plaintiff filed her application. *See id.*

---

[5]  ALJ Pelton considered listings 3.01, et seq. (respiratory); 3.03 (asthma); and 12.01, et seq. (mental), specifically 12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). *See* Dkt. No. 8-2 at 19.
[6]  The ALJ's use of "he" in the RFC portion of the decision is scrivener's error.
[7]  The ALJ further noted that "transferability of job skills is not an issue because the claimant does not have past relevant work." T. at 26.

## B. **Arguments**

Plaintiff argues that the ALJ failed to properly evaluate the opinions of her treating psychiatric providers, Dr. Carr and Dr. Jayasana, rendering the RFC unsupported by substantial evidence. *See* Dkt. No. 9 at 6-11. Specifically, plaintiff asserts that the ALJ did not explain how he considered the consistency factor. Plaintiff contends that the ALJ concluded that Drs. Carr and Jayasena's opinions were unpersuasive; however, plaintiff asserts that (1) their opinions were consistent with each other; (2) the ALJ was required to review this consistency; and (3) if she had, such review "would have merited finding these opinions reliable." *Id.* at 7-8. Plaintiff argues that the AL instead, relied on "the opinion of a consultative examiner which was authored one and two years prior to those authored by Plaintiff's treating providers," and, further, was "not in fact inconsistent with the opinions authored by Dr. Carr and Dr. Jayasena, but [whose opinion] is more so silent in the area in which they each gave consistent limitations" and is consistent insofar the consultative examiner "diagnosed Plaintiff with severe mental health disorders and found that Plaintiff was mildly to moderately limited in her ability to regulate her emotions." *Id.* Plaintiff argues that the error was not harmless because Drs. Carr and Jayasena gave opinions that were "clearly disabling" and were "supported and consistent" which "should have been found persuasive resulting in a finding of disability at Step Three or a far more limiting RFC than that given by the ALJ." *Id.* at 11.

Defendant contends that the ALJ properly considered the treating psychiatric providers' opinions, and that the decision is supported by substantial evidence. *See* Dkt. No. 12 at 3. Defendant argues that the ALJ reasonably based the RFC on the

observations and assessments from Dr. Long, Dr. Juriga, Dr. D'Ortona, and Nurse Practitioner ("NP") Thomas/Dr. Carr, and that opinions of consultative examiners and state agency medical consultants may be properly relied upon. *See id.* at 11. Further, the ALJ concludes that the ALJ properly considered plaintiff's activities of daily living, and that substantial evidence supports the ALJ's finding that plaintiff could perform simple work. *See id.* at 12.

Defendant further asserts that the ALJ properly evaluated Drs. Carr and Jayasena's opinions. *See* Dkt. No. 12 at 14. Defendant argues that Dr. Jayasena "does not provide an explanation nor cite any treatment records to support his conclusion." *Id.* at 13-14. He further argues that Drs. Carr and Jayasena's opinions are inconsistent with Dr. Long's opinions and Drs. Juriga and D'Ortona's findings, treatment records from Chenango Co. Behavioral Health, or plaintiff's "own statements." *Id.* at 14. He also argues that the consistency between Drs. Carr and Jayasena's findings "does not entitle either of them to greater persuasiveness." *Id.* at 15 (quoting *Tamara M. v. Saul*, 3:19-CV-1138 (CFH), 2021 WL 1198359, at *10 (N.D.N.Y. Mar. 30, 2021)). Defendant argues that even if the ALJ committed procedural errors, because the "'substance of the [regulation] was not traversed,' remand is not required." *Id.* at 16 (quoting *Elizabeth P.*, 2023 WL 2742139, at *2. Finally, defendant asserts that plaintiff essentially argues that the ALJ should have weighed evidence differently, but such is not the standard of review. *See id.* at 16-17.

In reply, plaintiff asserts that defendant's brief "fails to respond to Plaintiff's allegation that the ALJ failed to comply with the controlling regulations in his evaluation of the medical opinions." Dkt. No. 13 at 2. She further argues that defendant "misstates

the applicable law" insofar as he proposes that if the substance of the regulation were not traversed, remand would not be required; instead, asserting that this Court has held "that a substantial evidence review cannot cure a procedural error." *Id.* (citing *Alex J.M. v. Kijakazi*, No. 5:22-CV-243 (BKS/ML), 2023 WL 4467124, at *3 (N.D.N.Y. Jan 11, 2023)).[8]

## C. **Analysis**

Here, plaintiff argues that the ALJ's decision is not based on substantial evidence because she did not evaluate plaintiff's psychiatric treating providers, Dr. Carr and Dr. Jayasena, as required under the supportability and consistency factors. *See* Dkt. No. 9 at 6. More specifically, plaintiff argues that in performing this analysis, the ALJ did not consider the consistency of these doctors' opinions with one another. *See id.* at 7. Plaintiff also argues that the ALJ's "lack of consistency analysis is particularly glaring in this case where the ALJ instead chose to rely on the opinion of a consultative examiner which was authored one and two years prior to those authored by Plaintiff's treating providers." *Id.* at 9 (citing T. at 1187). Plaintiff argues that the ALJ's failure to assess the consistency between Dr. Carr and Dr. Jayasena's opinions regarding work-related mental limitations is grounds for remand because, "had it been properly completed," such an analysis "would have merited finding these opinions reliable." *Id.* at 8 (citing *Kathleen K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1160, 2022 WL 999686, at *6 (W.D.N.Y. Apr. 4, 2022)).

---

[8] Citing to a singular District of Connecticut case, which is within the Second Circuit, plaintiff further argues, "[a]s so many First Circuit Courts have repeatedly remanded cases where the ALJ fails to meet this obligation, so too should the Court here." Dkt. No. 13 at 2-3 (citing *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *6 (D. Conn. June 21, 2022)).

The RFC is "the most [an individual] can still do despite [his or her] limitations."
20 C.F.R. § 404.1545(a)(1). "RFC describes what a claimant is capable of doing
despite his or her impairments, considering all relevant evidence, which consists of
physical limitations, symptoms, and other limitations beyond the symptoms." *Malcolm
M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-0986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y.
Jan. 14, 2019) (citing *Martone*, 70 F. Supp. 2d at 150, and 20 C.F.R. §§ 404.1545,
416.945). "[A]n RFC finding is administrative in nature, not medical, and its
determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F.
App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2)). "In
assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of
performing; conclusory statements regarding plaintiff's capabilities are not sufficient."
*Martone*, 70 F. Supp. 2d at 150 (citations omitted).

In making the RFC determination, the ALJ must consider all relevant medical and
other evidence, including any statements about what the claimant can still do provided
by any medical sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "[T]he ALJ's
conclusion [need] not perfectly correspond with any of the opinions of medical sources
cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence
available to make an RFC finding that [i]s consistent with the record as a whole." *Matta
v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The Court "defer[s] to
the Commissioner's resolution of conflicting evidence[.]" *Smith v. Berryhill*, 740 F. App'x
721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted).
"Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence
and can point to evidence in the record to support his or her position, whether there is

substantial evidence supporting the [plaintiff's] view is not the question"; "rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022) (internal quotation marks and citation omitted)).  The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence," but "[t]he Court will not reweigh the evidence that was before the ALJ."  *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).

An ALJ "must consider all medical opinions and 'evaluate the[ir] persuasiveness' based on their supportability and consistency, the author's relationship with the claimant and specialization, and 'other factors.'"  *Cassandra G. v. Comm'r of Soc. Sec.*, 626 F. Supp. 3d 553, 564 (N.D.N.Y. 2022) (quoting 20 C.F.R. § 416.920c(a)-(c)); *see also* 20 C.F.R. § 404.1520c(a)-(c).  "Although the ALJ is not required to assign a specific 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'"  *Id.* (quoting § 416.920c(a) and (b)(1)); *see* 20 C.F.R. § 404.1520c(a), (b)(1). The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.*

§§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

"A conclusory analysis of the [relevant] factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision.  Indeed, '[c]ourts in this Circuit have remanded when the ALJ failed to address either supportability or consistency.'" *Annjeanette B. v. Kijakazi*, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (quoting *Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022), and *William B. J. v. Comm'r of Soc. Sec.*, No. 6:20-CV-0989 (LEK), 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022)).  "District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record."  *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *15 (N.D.N.Y. June 27, 2023) (citing *Stephanie F. v. Kijakazi*, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."), *Annjeanette B.*, 2023 WL 3040663, at *8, and *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory.  The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by examination.'  Such conclusory statements offer no insight into 'how well

[either doctor] supported and explained their opinion,' and are insufficient to withstand review.")); *see Tyler W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01345 (CFH), 2024 WL 1075209 (N.D.N.Y. Mar. 12, 2024) (remanding where "the ALJ summarily concluded that [the provider]'s opinion was 'poorly supported' and 'speculative,'" because "such conclusory statements are insufficient to meet the articulation requirements of the regulations") (internal quotation marks and citations omitted).

"[T]o analyze consistency, the ALJ must conduct 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *Ayala*, 620 F. Supp. 3d at 30 (quoting *Vellone*, 2021 WL 319354, at *6). "The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim." *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) (citation omitted). "As such, identifying a lack of consistency, but failing to explain the inconsistency in the context of the medical record as a whole prevents meaningful review." *James W. v. Kijakazi*, No. 8:20-CV-954 (DJS), 2022 WL 685288, at *4 (N.D.N.Y. Mar. 8, 2022).

NP Allison Thomas, of Chenango Co. Behavioral health, completed a medical source statement on January 13, 2023, which Dr. Carr signed pursuant to the practice's policy. *See* T. at 1189-93 (Dkt. No. 8-9). NP Thomas/Dr. Carr diagnosed plaintiff with paranoid schizophrenia, with a prognosis of "continuous." Id. at 1189. NP Thomas/Dr. Carr listed plaintiff's "signs and symptoms" as mood disturbance, paranoid thinking or inappropriate suspiciousness (with paranoid thinking underlined), seclusiveness or

autistic thinking (with parentheticals drawn around seclusiveness), emotional withdrawal or isolation, impulsive and damaging behavior, hallucinations or delusions, and persistent disturbances of mood or affect.  *See id.*  NP Thomas/Dr. Carr drew check marks along the line demarcating "unlimited or very good" and "limited but satisfactory" for the following abilities: remember work-like procedures, understand and remember very short and simple instructions, make simple work-related decisions, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, maintain socially-appropriate behavior, and adhere to basic standards of neatness and cleanliness.  *See id.* at 1190.  NP Thomas/Dr. Carr indicated that plaintiff was unable to meet competitive standards for the following abilities: carry out very short and simple instructions, maintain attention for two-hour segment, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, interact appropriately with the general public, travel in an unfamiliar place, and use public transportation.  *See id.*

NP Thomas/Dr. Carr also indicated that (1) plaintiff has had "limited efficacy w/ medications d/t adverse s/e," (2) her "auditory hallucinations are debilitating," (3) plaintiff's "general household function is a huge struggle," and (4) plaintiff "has a history of aggressive and volatile impulsivity."  *Id.*  NP Thomas/Dr. Carr indicated that

plaintiff does not have a low IQ or reduced intellectual functioning.  *See id.* at 1191.

Her mental health condition does not "exacerbate the experience of pain or any other

physical symptom."  *Id.*  NP Thomas/Dr. Carr further noted that plaintiff has deficiencies

in concentration "when anxious or stressed."  *Id.*  They indicated that plaintiff was likely

to be off task more than twenty percent of an eight-hour work day.  *See id.*  Her

impairments are likely to produce "good days" and "bad days."  *Id.*  They opined that

plaintiff is likely to miss more than four days of work per month due to of her

impairments.  *See id.*

On February 23, 2023, Dr. Jayasena completed a medical source statement.

*See* T. at 1311-14 (Dkt. No. 8-11).  Dr. Jayasena diagnosed plaintiff with schizophrenia

and excessive anger.  *Id.* at 1311.  Her prognosis is "Lifetime – Good."  *Id.*  Dr.

Jayasena listed plaintiff's signs and symptoms as mood disturbance, change in

personality, paranoid thinking or inappropriate suspiciousness, impulsive and damaging

behavior, and persistent disturbances of mood or affect.  *See id.*  Dr. Jayasena

assessed that plaintiff had an unlimited ability to adhere to basic standards of neatness

and cleanliness, and a satisfactory ability to: remember procedures, understand and

remember simple instructions, make simple decisions, ask simple questions or request

assistance, and maintain socially-appropriate behavior.  *See id.* at 1312.  Dr. Jayasena

concluded that plaintiff was "seriously-limited but not precluded" in her ability to: carry

out simple instructions, maintain attention for two hours at a time, maintain regular

attendance and punctuality within customary tolerances, sustain an ordinary routine

without special supervision, make simple decisions, perform at a consistent pace

without unreasonable rest periods, deal with normal work stress, interact appropriately

with the general public, and maintain socially-appropriate behavior.  *Id*.  Dr. Jayasena concluded that plaintiff was "unable to meet competitive standards" as it relates to her abilities to work in coordination with others, complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers without distracting them, and respond appropriately to changes in the workplace.  *See id*.

Consultative examiner Sara Long, Ph.D. performed a psychiatric consultative examination of plaintiff on October 22, 2021.  *See* T. at 1184 (Dkt. No. 8-9).  Plaintiff told Dr. Long that she lived with her two-year-old daughter, boyfriend, parents, and four siblings.  *See id*.  Plaintiff reported no psychiatric hospitalizations.  *See id*.  Plaintiff reported a normal appetite, difficulty sleeping, depression and anxiety, history of cutting, and hearing voices that tell her to harm herself.  *See id.*  She had no suicidal or homicidal ideation.  *See id*.  Dr. Long's mental status examination reports that plaintiff was "somewhat defensive, generally cooperative with good social skills."  *Id*. at 1185.  Plaintiff's thought processes were coherent and goal directed.  *See id*.  Dr. Long noted that plaintiff reported hearing voices, but observed that in prior evaluations, in 2016 and 2019, plaintiff denied auditory and visual hallucinations.  *See id*.  Dr. Long observed that there "was no indications of psychosis or related presentation in this or prior evaluation." *Id*.  Plaintiff "displayed a full range of appropriate affect in speech and thought content." Plaintiff's mood was euthymic, her sensorium was clear, and orientation was intact. *See id*.  Plaintiff was able to complete serial 3s but unable to complete serial 7s.  *See id*. Plaintiff repeated three objects immediately and recalled two objects after five minutes.

*See id.* "Digits forward she completed to 5 digits, digits backward to 2." *Id.* Dr. Long noted that a January 2019 examination revealed a full-scale IQ of 70, concluding that plaintiff "presents as possibly high borderline level of intellectual functioning with a somewhat limited fund of information." *Id.* at 1186. Plaintiff had fair insight and poor-to-fair judgment as "[s]he presents with external locus of control." *Id.* As for consistency, Dr. Long concluded that plaintiff "presents as capable, possibly needing direction." *Id.* As to her mode of living, plaintiff reported that she is capable of performing her own grooming, cleaning, laundry, and shopping. *See id.* Plaintiff reported no socialization, stating, "I don't get along with people," but stated that she had "[s]ome good family relationships." *Id.* Plaintiff stated that her hobbies were watching TV and drawing. *See id.*

Dr. Long next concluded that there did not appear to be limitations regarding simple and complex tasks. *See* T. at 1186. "Regarding some complex tasks and making appropriate decisions, there appear to be moderate limitations." *Id.* Dr. Long noted that there did not appear to be limitations regarding interacting adequately with others, maintaining attention and concentration, maintaining a regular schedule, controlling her behavior, maintaining personal hygiene, and being aware of appropriate precautions. *See id.* "There may be mild to moderate limitations regarding regulating emotions." *Id.*

Dr. Long concluded that the result of her examination appeared "to be consistent with psychiatric and cognitive problems which may, at times, interfere with her ability to function on a regular basis." T. at 1186. Plaintiff reported diagnoses of borderline personality disorder and intellectual disabilities, by history. *See id.* at 1187. Dr. Long

provided that plaintiff's prognosis "appears good, given vocational counseling, consistent psychotherapy, and motivation to acquire skills. Prognosis might be re-evaluated after more time for appropriately high clinical level of psychotherapy and review of prior treatment history." *Id.*

State agency psychological consultants M. Jurgia, Ph.D. and M. D'Ortona, Psy.D, reviewed plaintiff's psychiatric medical records on November 8, 2021, and February 16, 2022, respectively. *See* T. at 106-08, 110-14 (Jurgia); T. at 126-29, 131-24 (D'Ortona). Dr. Jurgia concluded that plaintiff had moderate limitations in: understanding, remembering, and applying information; carrying out detailed instructions; interacting with others without distracting them or plaintiff being distracted by them; responding appropriately to changes in the work setting; setting realistic goals or plans independently of others; performing activities within a schedule; maintaining attention and concentration for extended periods; persisting; managing herself; responding appropriately to instructions and criticism from supervisors; and completing a normal work day and work week without interruptions from psychologically-based symptoms. *See id.* at 106. Dr. Jurgia noted that plaintiff cares for her daughter and pets, prepares food, cleans, does laundry, shops, pays bills, handles money, does not like being outside, but that she talks and texts with others daily. *See id.* at 108-112. Dr. Jurgia concluded that plaintiff could perform simple work in a low-contact setting. *See id.* at 114.

Dr D'Ortona opined that plaintiff was moderately limited in her abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general

public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently. *See id.* at 131-35. Dr. D'Ortona concluded that plaintiff could perform simple work in a low-contact setting, and, thus, plaintiff is not disabled. *See id.* at 134, 136.

The ALJ reviewed the opinion of Dr. Long, the psychiatric consultative examiner, concluding it to be persuasive. *See* Dkt. No. 8-2 at 24. The ALJ noted that Dr. Long's evaluation is "consistent with the State agency findings and supported by mental health records which show improvement with medication." *See id.* at 25. The ALJ explained that the record reflected that, even with plaintiff's mental impairments, her medication was "successful at managing her symptoms" and "there are multiple instances of normal mental status examinations reflected in the record." *Id.*

The ALJ further concluded that Dr. Jurgia and Dr. D'Ortona's opinions were "persuasive as they are supported by the mental health treatment record and consistent with the psychiatric consultative examination." T. at 24. Further, their findings "are consistent with the claimant's own statements in her function report." *See id.* "Despite the claimant's mental impairments," the ALJ noted that "the record reflects that the medication was successful in managing her symptoms" and that "there are multiple instances of normal mental status examinations reflected in the record." *Id.*

The ALJ concluded that Dr. Carr's (and NP Thomas') opinion was not persuasive. *See* T. at 25. The ALJ averred that the opinion "is not supported by the mental health treatment record or history." *Id.* The ALJ further concluded that plaintiff's

statements regarding her daily activities "contradict this level of limitations[,]" noting that plaintiff reported that she can pay bills, perform simple maintenance, pay bills, and shop, "activities which would presumably require the ability to understand, remember and apply information." *Id*.   The ALJ noted that plaintiff's ability to shop and reside with others "presumably require[s] the ability to interact appropriately with others." *Id.* The ALJ observed that medical record reflected plaintiff's memory and concentration as being reported to be "normal or intact." *Id.*  Plaintiff's reports of her abilities to prepare meals, watch TV, and manage funds "would presumably require the ability to concentrate, persist, or maintain pace." *Id.*

The ALJ similarly found Dr. Rohan Jayasena's opinion as nonpersuasive as she concluded it was "unsupported by the mental health treatment record or history." T. at 25-26.  The ALJ noted that plaintiff's memory is recorded as "normal or intact" throughout the medical records, she is able to shop and live with others, activities "which would presumably require the ability to interact appropriately with others; "the medical evidence shows that the claimant had a good rapport with providers and she was described as cooperative"; she reported that she is able "to prepare meals, watch TV, and manage funds, activities which would presumably require the ability to concentrate, persist and maintain pace"; and "throughout the record the claimant's attention and concentration were noted to be normal or intact." *Id*. at 26.

The ALJ considered both Dr. Carr's and Dr. Jayasena's opinions and concluded that their opinions were inconsistent with Chenango Co. Behavioral's treatment[9] records and plaintiff's statements of her own limitations.  *See* T. at 26.   Contrary to plaintiff's

---

[9]   This is NP Thomas and Dr. Carr's medical practice.

arguments otherwise, the ALJ was not required to discuss explicitly the consistency of between Dr. Carr (NP Thomas) and Dr. Jayasena's opinions. As noted above, the regulations provide that "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." *Id.* § 404.1520c(c)(2).  The ALJ explicitly considered both Dr. Carr and Dr. Jayasena's opinions and concluded that their opinions were inconsistent with Chenango Co. Behavioral's treatment records and plaintiff's statements of her own limitations.   *See Laura K. v. Comm'r of Soc. Sec.*, No. 23-CV-641 (JLS), 2025 WL 339006, at *5 (W.D.N.Y. Jan. 30, 2025) (concluding that, although the ALJ did not explicitly compare the consistency of two medical opinions to each other, the ALJ properly considered the consistency of their opinions with the record as a whole, observing that the providers' opined limitations were not supported by treatment records and examinations) (citing *Tiffany A. J. v. Comm'r of Soc. Sec.*, 1:20-CV-01903 (JJM), 2023 WL 2202628, at *5 (W.D.N.Y. Feb. 24, 2023) ("Although ALJ Cascio does not directly compare Dr. Coniglio's opinion with Dr. Huckell's, or state that he finds the lifting restriction in Dr. Coniglio's opinion inconsistent with Dr. Huckell's, his reasoning is clear because he discusses Dr. Coniglio's opinion in the same paragraph as, and immediately after, his analysis of Dr. Huckell's opinion.")).

For example, Dr. Carr and Jayasena both concluded that plaintiff was unable to complete a workday or work week without interruption from her mental health symptoms, accept instructions or respond appropriately to criticism from supervisors, get along with coworkers and peers without unduly distracting them, or respond

appropriately to changes in the work place.  *See* T. at 1190, 1312.  Dr. Carr explained that plaintiff was unable, and Dr. Jayasena concluded that plaintiff was seriously limited in performing the following abilities: carrying out simple instructions, maintaining attention for two hours at a time, maintaining regular attendance and be punctual within customary tolerances, sustaining an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, dealing with normal work stress, and interacting appropriately with the general public.  *See id*.  Dr. Carr cited the reason for these limitations as plaintiff's paranoia, auditory hallucinations, and limited efficacy of medications.  *See id.* at 1190.  Dr. Jayasena cited plaintiff's anger issues and schizophrenia.  *See id*. at 1312.

In finding these opined limitations unpersuasive, the ALJ pointed to records showing improvement with medication and multiple medical records reflecting normal mental status examinations, the state agency findings, and plaintiff's statements.  *See* T. at 25 citing (Exh. B6F at 9, 32, 39, and 92).  For several of Drs. Carr's and Jayasena's opined significant limitations, the ALJ pointed to medical records or self-reports demonstrating use of that ability.  For example, plaintiff's memory being reported as normal and intact throughout the medical record and plaintiff's ability to perform basic maintenance, prepare meals, pay bills, and shop demonstrates an ability to understand, remember or apply information, and plaintiff's ability to shop, live with others, and maintain a good rapport with providers demonstrates an ability to interact appropriately with others.  *See id.* at 25. (Exh. B9E)  The ALJ observed that plaintiff's ability to perform certain tasks, such as preparing meals, managing money, watching TV, demonstrates an ability to concentrate, persist, and maintain pace.  Further, despite

22

plaintiff's claim that the ALJ put too much weight on her limited activities of daily living, the ALJ also relied on several medical records demonstrating plaintiff's normal attention and concentration and the opinions of Dr. Long and the state agency consultants which conclude that plaintiff is not precluded from performing tasks associated with simple work, non-quota driven work, with only occasional contact with others and changes in the work setting.  *See id.* at 25, 26 citing Exhs. B1F at 5, B6F at 5.

Moreover, the ALJ did not cherry-pick by pointing to only evidence of examinations with normal mental status examinations; rather, she reviewed plaintiff's medical record in depth, assessed her symptoms "over time," and highlighted records reflecting both normal findings and more significant findings.  *Cf. Carrie G.W. v. Comm'r of Soc. Sec.*, No. 1:23-CV-1552 (AMN/MJK), 2024 WL 5378978, at *7 (N.D.N.Y. Oct. 9, 2024), *report and recommendation adopted*, No. 1:23-CV-1552 (AMN/MJK), 2025 WL 249100 (N.D.N.Y. Jan. 21, 2025) (finding that the ALJ referenced records showing normal findings, but the record also showed the plaintiff consistently reporting symptoms of anxiety, depression, fatigue, brain fog, and medical records reported that the plaintiff presented with slow thought and speech, limited concentration, and flat and withdrawn affect, which the ALJ did not reference) (citing *Faure v. Comm'r of Soc. Sec.*, 685 F. Supp. 3d 247, 263 (S.D.N.Y. 2023) ("[P]articularly with mental illness, it is important to assess the patient's symptoms over time.").

The ALJ reviewed in detail plaintiff's 2022 mental health treatment records which she determined supported a conclusion that plaintiff "continued to experience mostly mild to moderate symptoms from her mental health impairments."  T. at 23.  For example, the ALJ noted records from Dr. Carr's office where plaintiff reported, in March

2022, to have an increase in depression, reporting it to be a five or six out of ten in severity, but that NP Thomas observed that plaintiff's affect and memory were normal and her mental status examination "was noted to be mostly normal." *Id.* at 23 (citing Exh. B6F at 54, 57 (Dkt. No. 8-10)).  The ALJ also pointed to a June 2022 treatment record from Dr. Carr's office where plaintiff reported to be doing "pretty good," with a euthymic mood, appropriate affect, mostly normal mental status examination and no hallucinations.  *Id.* (citing Exh. B6F at 68).  She reviewed an August 2022 record from Dr. Carr's office where plaintiff "presented as extremely anxious with pacing and difficulty with eye contract," but "[d]espite this, a mental examination of the claimant was normal." *Id.* (citing Exh. B6F at 74, 78).  Two months later, the ALJ observed, plaintiff continued to struggle with paranoia and would not leave the house without family, but "[d]espite this, she reported that she was doing good and was enrolled in a GED program." *Id.* (citing Exh. B6F at 86).  The ALJ further observed that two months later, plaintiff reported to NP Thomas that "she was doing good and was still in the GED program and continued to report good efficacy of medication for mood stability, anger, and anxiety." *Id.*

The ALJ performed a similarly detailed review of plaintiff's medical records from 2020, noting "mostly mild to moderate symptoms from her impairments, which were effectively managed by conservative treatment."  T. at 22.  The ALJ highlighted a treatment record from January 2020, from Dr. Carr's office (NP Thomas) which reported that plaintiff felt her anxiety and depression were worse when there was arguing in the home, but that things at home were overall good, and NP Thomas assessed plaintiff a nine on the PHQ-9 depression scale, indicating a mild severity of depression.  *See id.*

(citing Exh. B1F at 1, Dkt. No. 8-9).  At this appointment, plaintiff had an empty mood and flat effect, but unimpaired memory, logical speech, and no hallucinations.  *See id*. In a July 2020 treatment record from Dr. Carr's office, plaintiff reported voices telling her to kill herself, continuing to have a problem with her anger, sleeping and eating "ok," no hallucinations, and a had "mostly normal" mental status examination.  *Id*.  In a November 2020 appointment with Dr. Carr's office, plaintiff reported that her medications were working well and that she had a "tendency to cut herself when she got depressed."  *Id*.  At a December 2020 appointment, plaintiff was not suicidal or violent, and the "examiner noted that the claimant was improved, but still had anger issues which are manageable."  *Id*.

In reviewing plaintiff's 2021 mental health treatment records, the ALJ concluded that her "symptoms and impairments continued to be effectively managed with conservative treatment."  T. at 22 (citing Exh. B6F (Dkt. No. 8-10)).  In April 2021, plaintiff reported to NP Thomas "that her anger as a lot better compared to the past"; her mood was "described as anxious, while her affect was noted to be intense.  Aside from this, a mental status examination was noted to be normal."  *Id*.  The ALJ reviewed plaintiff's June 2021 treatment records with Dr. Carr's office, wherein plaintiff reported a "peak[]" in her auditory hallucinations, and her mood was "described as depressed while her affect was noted to be appropriate."  *Id*.  The ALJ also reviewed an August 2021 treatment note wherein plaintiff "reported that medication was helping with her hyper vigilance and her mood fluctuations, she was not as irritable," and denied "aggressive behavior with her family."  *Id*. at 22-23.  "Despite this," plaintiff's August 2021 mental

status examination was "mostly normal," with euthymic mood and appropriate affect. *See id*. at 23.

The also ALJ reviewed plaintiff's October 2021 physical consultative examination, wherein, as relevant here, plaintiff reported living with family and her boyfriend, cooking and cleaning daily, doing laundry one or twice a week, shopping once a month, performing childcare daily, showering every other day, and daily dressing. *See* T. at 23 (citing Exh. B3F, Dkt. No. 8-9). The ALJ observed that the examiner reported plaintiff to be in no acute distress during the exam. *See id*.

Although the ALJ did not explicitly state that Dr. Carr/NP Thomas and Dr. Jayasena's opinions were consistent with one another, she explained in great detail and with record support why she believed their opined limitations were not reflective of the overall medical records – including records from Dr. Carr's own office – or plaintiff's self-reported symptoms and activities. *See* T. at 22-25; *see Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362 (AMN/CFH), 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362 (AMN/CFH), 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023) ("Solely because two opinions may be consistent with each other, does not mean they are consistent with the record as a whole, and the ALJ is not required to accept their opined limitations."); *Ashley Y. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00065-MAV, 2025 WL 957552, at *7 (W.D.N.Y. Mar. 31, 2025) ("With regard to Plaintiff's contention that the ALJ erred by failing to recognize the consistency between Dr. Ippolito's restrictive limitations and NP Roche's opinion, the Court finds the argument to be without merit. Assuming, *arguendo*, that Dr. Ippolito's restrictive limitations were consistent with NP Roche's treating opinion and the ALJ failed to

consider the consistency between them, there was no error inasmuch as the 'consistency' factor under 20 C.F.R. § 404.1520c(c)(2) requires 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'") (*citing Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-cv-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022)); *Veronica L. v. Comm'r of Soc. Sec.*, No. 24-CV-1079 (KHP), 2025 WL 720865, at *6 (S.D.N.Y. Mar. 6, 2025) ("Further, 'nothing in the regulations . . . specifically requires that an ALJ discuss this sort of internal consistency; [r]ather, the regulations simply require that an ALJ assess each medical opinion's consistency with the other evidence in the record,' as the ALJ has done here.") (quoting *Young v. Kijakazi*, No. 20-cv-03604-SDA, 2021 WL 4148733, at *10 (S.D.N.Y. Sept. 13, 2021) and (citing 20 C.F.R. § 404.1520c(b)(2)); *Tamara M.*, 2021 WL 1198359, at *10.

Moreover, even absent the explicit discussion of the consistency between Dr. Carr and Dr. Jayasena's opinions, the ALJ's analyses of Dr. Carr and Dr. Jayasena's opinions – which immediately follow one another in her decision – are identical at many points, strongly suggesting that she did not review these two opinions in isolation from one another.  *See generally Amanda L. v. Bisignano*, No. CV 24-08488 (GC), 2025 WL 1885962, at *5 (D.N.J. July 8, 2025) (noting that the "reasonable articulation standard" "need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.") (citing *Joseph P. v. Comm'r of Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (quoting 82 Fed. Reg. 5844-01, at 5858)).  Thus, although there is a line of cases in this District where courts remand based, at least in

part, on the ALJ's failure to discuss opinions consistency with each other, as defendant properly observes,

> there is no requirement that an ALJ explicitly compare the opinions to one another. The pertinent regulation states, "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 416.927(c)(4) (emphasis added). The ALJ demonstrated that he considered each opinion in the context of the other evidence in the record, including treatment notes, both opinions, hearing testimony, and other filings, and determined that the marked limitations stated in both opinions were inconsistent with that other evidence.

*Theresa M.*, 2024 WL 1174369, at *9.

The undersigned does not find remand warranted here, where the ALJ reviewed each medical opinion in great detail and discussed the doctors' opinions consistency with the record as a whole and their own treatment records.  Although plaintiff opines that, had the ALJ explicitly considered the consistency of Dr. Carr and Dr. Jayasena's opinions with one another, it "would have merited finding these opinions reliable," Dkt. No. 9 at 8, it is not likely that performing such an analysis would at all alter her assessment of these opinions.  More significantly, it was not required.  Plaintiff's argument ignores an important point – that the ALJ found that Dr. Carr and Dr. Jayasena's opinions were each inconsistent with the objective medical record as a whole and undermined by the examiner's own objective findings.  As the ALJ's rationale is clear in not finding Dr. Carr and Dr. Jayasena's more restrictive opinions persuasive, and the regulations do not require her to explicitly compare their opinions with one another, the undersigned finds that ALJ's consistency analysis, leading to the mild-to-moderate limitations the ALJ incorporated into the RFC and her conclusion that plaintiff is not disabled as defined under section 1614(a)(3)(A) of the Social Security Act, is

supported by substantial evidence.  Plaintiff's challenge to the ALJ's persuasiveness assessment is "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence."  *Lakesha R*., 2024 WL 3649904, at *12 ("Plaintiff also argues that the ALJ's decision did not highlight records more favorable to a disability determination, including instances of increased anxiety and documentation of the impact of Plaintiff's learning disabilities" which amount to a disagreement on how the ALJ weighed "arguably conflicting" evidence, and the Court declined to "reweigh the evidence presented to the ALJ") (quoting *Kimball v. Comm'r of Soc. Sec*., No. 6:14-CV-0698 (LEK/ATB), 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015) (additional citation omitted)).  "Indeed, the ALJ's RFC conclusion need not even "perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence,' *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022), which the Court finds that it is."  *Ashley Y*., 2025 WL 957552, at *7.

Plaintiff argues that the ALJ's failure to compare the consistency of Dr. Carr (NP Thomas) and Dr. Jayasena's opinions is "particularly glaring" because the ALJ "instead chose to rely on the opinion of a consultative examiner" who issued her opinion between one and two years before these doctor's opinions, meaning Dr. Long "did not have the benefit of reviewing the two additional years of treatment records nor was she able to see the opinions authored by the treating providers."  Dkt. No. 9 at 9.  First, plaintiff does not argue that her mental health symptoms worsened or otherwise changed in the one-to-two years after Dr. Long's examination to suggest that any part of Dr. Long's examination is stale.   Plaintiff points to no medical records that show a substantial divergence from the records Dr. Long did review and her examination of

plaintiff to suggest that Dr. Long's opinion was not based on a reasonable assessment of plaintiff's mental condition and limitations.

Second, to the extent plaintiff – by pointing out that the ALJ "instead relied" on a consultative examiner's opinion – may be seeking to suggest that the ALJ improperly credited a consultative examiner (and nonexamining state agency medical consultants) over treating providers, this would also not be ground for remand as the ALJ explained her rationale for the persuasiveness she accorded to their opinions. S*ee, e.g., Najah A. v. Comm'r of Soc. Sec*., No. 21-CV-06104-LJV, 2023 WL 4905338, at *3 (W.D.N.Y. Aug. 1, 2023) ("[N]o rule prohibits an ALJ from favoring a prior administrative finding over the opinions of treating or examining sources, see 20 C.F.R. § 416.920c(a)[.]"); *Joseph T. v. Comm'r of Soc. Sec*., No. 22-CV-6209MWP, 2024 WL 3228055, at *5 (W.D.N.Y. June 28, 2024) ("I reject any contention that remand is warranted because the ALJ determined that the opinions authored by the non-examining physicians were more persuasive than the opinion authored by the examining consultant.") (collecting cases).

Plaintiff's argument offers an alternative reading of both the record and of weighing the competing medical opinions. Nevertheless, for the reasons discussed above, the undersigned finds the ALJ's decision supported by substantial evidence; thus, it must be sustained under the deferential standard of review. *See DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022) ("To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ built into her RFC. But that is not the test."); *Brault v. Soc. Sec. Admin*., 683 F.3d 443, 448 (2d Cir. 2012)

(per curiam) ("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise.") (emphasis in original) (citation and internal quotation marks omitted).

Inasmuch as plaintiff contends that the ALJ "blanketly relied" on plaintiff's "performance of daily activities to reject the opinion evidence but then failed to explain to what extent Plaintiff performed those activities or how such activities translated into anything that equated to substantial daily activity" amounts to legal error, the undersigned disagrees. Dkt. No. 9 at 9. The ALJ reasonably indicated that Dr. Carr and Dr. Jayasena's opinions that plaintiff was unable or seriously limited to interact with others appropriately, maintain concentration, maintain pace, focus, remember, and concentrate is reasonably inconsistent with plaintiff's regular ability to perform activities requiring such skill. The ALJ reasonably found that evidence of plaintiff's ability to perform such activities was inconsistent with Dr. Carr and Jayasena's highly restrictive opinions. *See Lakesha R. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00918 (AMN/ML), 2024 WL 3649904, at *11 (N.D.N.Y. June 11, 2024), *report and recommendation adopted*, No. 5:23-CV-00918 (AMN/ML), 2024 WL 3517733 (N.D.N.Y. July 24, 2024) ("As part of her decision, the ALJ also detailed Plaintiff's daily activities such as meal preparation and other care for her young son, chores such as laundry and cleaning, regular shopping, as well as attempts to work . . . .") (citing *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing the ALJ to consider daily activities in determining consistency with alleged symptoms) and *Herrington v. Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (holding activities of daily living, including childcare, are appropriate factors for an ALJ to consider when

assessing a plaintiff's claimed symptoms and limitations)).  The ALJ did not err in declining to adopt restrictive limitations for abilities not supported by plaintiff's activities of daily living and reflected in her medical treatment notes. *See, e.g.*, *Robert L. v. Saul*, No. 8:19-CV-415 (MAD), 2020 WL 1689886, at *10 (N.D.N.Y. Apr. 7, 2020) ("Plaintiff ignores the fact that he has the burden of showing limitations beyond those described in the RFC").

### 3.  **Plaintiff's Testimony**

Plaintiff similarly argues that the ALJ ignored plaintiff's testimony that supported limits on her ability to interact with others.  *See* Dkt. No. 9. at 10-11.  She contends that the ALJ "ignored plaintiff's significant juvenile criminal and medical history."  Dkt. No. 9 at 10.  She points out her hearing testimony where she indicated that, as a teenager, she had been arrested, in jail, on parole, and twice on probation."  *Id.*  Plaintiff also points to her testimony regarding her anger, history of self-harm, hearing voices that tell her to kill herself, and that "she does not like the 'noise level' in her home where she lives with eleven other people." *Id.* at 10-11.  Plaintiff accuses the ALJ of relying on plaintiff's "reports of cooking and shopping" to "ignore this devastating history," contending that the ALJ cherry-picked.  *See id.* at 11.  Plaintiff argues that such error is not harmless because her testimony supported Drs. Carr and Jayasena's opinions.  *See id.*

The ALJ noted that she considered plaintiff's statements in her initial application and testimony "but does not find them to be persuasive.  *See* Dkt. No. 8-2 at 26.  The ALJ instead "relie[d] on claimant's activities of daily living, the objective medical evidence of record, and the opinion evidence in finding the claimant is capable of work

within the confines of the residual functional capacity." *Id*. That the ALJ did not explicitly discuss plaintiff's juvenile criminal history is not ground for remand. Plaintiff points to no medical evidence concluding that plaintiff's juvenile criminal history, which does not appear to have continued into adulthood/the relevant period, stems from, or otherwise connects to, plaintiff's *current* mental health symptoms/diagnoses or somehow impacts plaintiff's work-related abilities. Plaintiff cites no case law or regulation that states that an ALJ must explicitly consider a claimant's juvenile criminal history, when the claimant has no such history during the relevant period under consideration, when assessing their mental functional limitations. Further, although the ALJ did not explicitly detail plaintiff's juvenile criminal history, she noted that she considered "the allegations set forth by the claimant in her initial application and testimony[.]" Dkt. No. 8-2 at 27.

Although the ALJ may not have explicitly singled out plaintiff's testimony regarding a history of self-harm or hearing voices, her issues with anger, and difficulties living with family, she explicitly reviewed medical records noting those findings. *See* T at 22 (reviewing records from 2021 and 2022, wherein plaintiff reported hearing voices that tell her to kill herself and that her "auditory hallucinations had peaked and commanded her to kill herself; that in 2020, plaintiff stated that her anxiety and depression worsen when people in her home are arguing; reviewing records from 2020 where plaintiff reported "a tendency to cut herself when she got depressed" and that she "still had anger issues which were manageable"; reviewing 2021 medical records showing that "her anger was a lot better compared to the past," that her medications were helping with her mood fluctuations, she reported that "she was not as irritable,"

and "she denied any aggressive behavior with her family").  Thus, as it is clear the ALJ did not "ignore this devastating history," Dkt. No. 9 at 11, the ALJ's failure to discuss plaintiff's hearing testimony highlighting symptoms that the ALJ already explicitly reviewed as part of her decision is not ground for remand.

## V.  **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 12) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.

Dated: August 25, 2025
    Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge